```
           IN THE UNITED STATES DISTRICT COURT
            FOR THE SOUTHERN DISTRICT OF OHIO
                     EASTERN DIVISION
```

Candace M. Bowling,              :

    Plaintiff,                :

  v.                             :      Case No. 2:07-cv-0701

Michael J. Astrue,               :      JUDGE FROST
Commissioner of Social Security,
                               :
    Defendant.

<u>OPINION AND ORDER</u>

I.

Plaintiff, Candace M. Bowling,, filed this action seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability benefits. That application, which was filed on January 29, 2002, alleged that plaintiff became disabled on November 1, 2000, as a result of a torn rotator cuff, a pinched nerve, and a herniated disk.

After initial administrative denials of her claim, plaintiff was afforded a hearing before an Administrative Law Judge on July 28, 2004. In a decision dated March 10, 2005, the Administrative Law Judge denied benefits. That decision became the final decision of the Commissioner when the Appeals Council denied review on May 18, 2007.

Plaintiff thereafter timely commenced this civil action. The record of administrative proceedings was filed in this Court on September 24, 2007 and supplemented on October 11, 2007. Plaintiff filed a statement of errors on February 28, 2008, to which the Commissioner responded on May 30, 2008. No reply brief has been filed, and the action is now ripe for decision.

II.

Plaintiff's testimony at the administrative hearing revealed

the following. Plaintiff, who was 46 years old at the time of the administrative hearing, completed the tenth grade in high school and later obtained her GED. (Tr. 474). She also obtained technical training in the area of medical assistant. Id. She has a CDL as well. (Tr. 475).

Plaintiff last worked as a school bus driver. Id. She has also worked as a waitress, a physician's assistant, and a housecleaner. (Tr. 475-76). Most of her work other than driving a bus required her to be on her feet all day and to lift twenty to thirty pounds. (Tr. 478-79).

Plaintiff testified that she could no longer work due to pain in her neck, shoulders and arms. (Tr. 480). Turning her head exacerbates her neck pain, as will sitting too long. (Tr. 481). She experiences pain in her arm from chores like doing dishes. (Tr. 483). She has experienced some pain relief from epidural injections. (Tr. 484). She also has asthma which is treated by inhalers. (Tr. 485). She sees a psychologist for treatment of depression secondary to pain. (Tr. 486).

Plaintiff does dishes occasionally and also fixes meals for her family. (Tr. 488). She does few, if any, other household chores. Id. On a daily basis, she takes both prescription and non-prescription pain medication, medication for depression and asthma, and medication for indigestion. (Tr. 489-93). Side effects from those medications include nausea, constipation, and shakiness. (Tr. 494). She has difficulty sleeping at night and will lie down several times during the day. (Tr. 495). She is still able to go fishing. She also watches television. She can drive but gets confused or lost at times. (Tr. 496-98).

III.

Pertinent medical records reveal the following. Plaintiff was seen by Dr. Randolph on April 19, 2001, for evaluation of her claim of a work-related injury. She described having fallen

-2-

backwards while attempting to enter a school bus on October 12, 2000, experiencing both leg and arm injuries.  The leg injuries eventually resolved but the arm injuries did not.  She had been seen by Dr. May for those problems.  Dr. Randolph found tenderness in the right shoulder and a reduced range of motion along with a positive impingement sign.  A prior MRI showed no rotator cuff tear but did indicate distal anterior supraspinatus tendonopathy.  He noted that Dr. May had diagnosed a sprain and strain and had released plaintiff to go back to work as of April 30, 2001.  Dr. Randolph did not believe that plaintiff had reached maximum medical improvement and thought she needed physical therapy.  He concluded that she could not return to her bus driving job but was capable of work that did not involve the use of her right arm.  (Tr. 153-56).

Plaintiff had arthroscopic surgery performed on her shoulder on June 4, 2001.  A partial tear of the rotator cuff was found and was debrided.  The surgeon also performed a subacromial decompression and distal clavicle resection.  No complications were noted.  (Tr. 158-61).

Plaintiff was examined by Dr. Frank in connection with her workers' compensation claim on December 5, 2001.  He noted that after her surgery she had several months of physical therapy but continued to experience pain.  Her pain was described as frequent but not constant.  He also noted tenderness over the shoulder area and restrictions in her shoulder motion.  Dr. Frank was not sure why she was still in pain but believed her complaints of pain were real.  He recommended another MRI and doubted that she could ever return to her employment as a bus driver.  He restricted her to lifting 6-7 pounds and believed she could neither perform repetitive motions with her right shoulder nor lift her arm above shoulder level.  (Tr. 178-80).

Plaintiff underwent a psychological evaluation by Dr. Tanley

on May 20, 2002.  She reported various symptoms since her injury including crying and a sleep disturbance.  There was a sense of helplessness and hopelessness expressed.  Dr. Tanley diagnosed a chronic adjustment disorder with depressed mood and a pain disorder.  Her ability to relate to others was mildly impaired and her ability to withstand the stress and pressure of daily work was moderately impaired.  She could maintain adequate attention to perform simple tasks with the context of low average range intelligence.  (Tr. 185-87).  A state agency reviewer concluded, based upon this report and no information from any treating source, that plaintiff's psychological impairment was not severe.  (Tr. 188-204).  Another state agency reviewer examined the medical reports and concluded that plaintiff could do light work with restrictions based on her shoulder pain.  (Tr. 205-12).

    Dr. Drown evaluated plaintiff's psychological condition at the request of her attorneys.  Plaintiff reported increased anger and irritability following her injury.  She also reported an increase in anxiety and loss of energy.  She appeared as an anxious person who looked physically exhausted and in pain.  Dr. Drown diagnosed major depression as well as an aggravation of a pre-existing dysthymic disorder which he believed were related to her injury.  He recommended 26 weeks of cognitive and behavioral therapy.  He thought her prognosis was good if she were permitted to follow this course of treatment.  He assessed her GAF as 45, or a marked impairment.  (Tr. 220-28).  In a separate questionnaire, he also described her ability to deal with work stress as markedly impaired due to her preoccupation with her work injury and with pain.  (Tr. 217-19).  After treating her for a time, Dr. Drown stated in a letter dated April 9, 2003, that plaintiff had only a poor ability to follow work rules, deal with work stress, function independently, and maintain attention and

-4-

concentration.  He expressed the opinion that she was not employable.  (Tr. 242-43).  Later, in a letter dated July 10, 2003, he described her as a "very hard working client with a genuine desire to want to return to work some day in the future." (Tr. 378-79).

Dr. May submitted notes indicating his treatment of plaintiff after her initial injury.  The notes include the records of her surgery in 2001.  Dr. May re-evaluated plaintiff on November 26, 2002.  At that time, the repeat MRI showed only degenerative disc disease at C5-6.  Dr. May was unsure what else to do to treat her pain and suggested evaluation by a pain management specialist to bring her pain and depression under control.  He also referred her for epidural injections, which were performed in the first several months of 2003.  (Tr. 246-362).

Dr. Flexman, a clinical neuropsychologist, examined plaintiff on March 27, 2003, also for purposes of evaluating her workers' compensation claim.  At that time, she reported having been in therapy for a year to deal with depression and frustration.  She complained about headaches and neck pain as well as arm pain and numbness.  Testing suggested moderate malingering issues.  The MMPI was administered and the scores were generally viewed as valid although plaintiff was defensive in her presentation.  She appeared to be over-concerned with her bodily health and disability.  Plaintiff was depressed and crying during the evaluation.  Dr. Flexman thought she was making progress in therapy and had not reached maximum medical improvement.  He believed her depression and general mood were incompatible with being a bus driver and that she should not work in an environment requiring vigilance.  He thought she would have difficulty as well with sustained attention and concentration. (Tr. 373-77).

Dr. May completed a physical residual capacity report on April 7, 2004.  In it, he limited plaintiff to essentially sedentary work with the need for a sit-stand option and also limited her to working no more than four days a week and less than four consecutive weeks per month.  He also limited her to working in a clean environment.  (Tr. 380-81).

Dr. Holzapfel evaluated plaintiff for her workers' compensation claim on March 18, 2004.  He also concluded she could not return to her bus driver's job because of limitations in the use of her right arm.  He did think she could work, but could not lift more than six or seven pounds and could not do repetitive grasping with her right hand or elevating her right arm above shoulder level.  (Tr. 438-39).

Finally, Dr. Donaldson, a psychologist, evaluated plaintiff on September 20, 2004.  During the evaluation, plaintiff's affect was flat and she appeared anxious.  She reported often having feelings of helplessness and hopelessness.  Her full-scale IQ was measured at 71, which is within the borderline range of intelligence.  The MMPI score was invalid.  Dr. Donaldson thought she suffered from depression and an anxiety disorder and that her GAF was 50-55.  The most significant limitation he identified in the narrative portion of his report was a moderate impairment in her ability to perform repetitive tasks and to attend to relevant stimuli, although he identified several additional moderate impairments in a form attached to his report.  All other functions were only mildly limited.  (Tr. 441-49).

IV.

A medical expert, Dr. Johnson, and a vocational expert, Ms. Kaufman, also testified at the administrative hearing.  Dr. Johnson noted that plaintiff had actually not torn her rotator cuff when she was injured at work, but rather suffered from tendonopathy.  She also had minimal impingement syndrome

-6-

involving an impingement of the clavicle on the shoulder due to arthritis.  She had a mild herniation at C-6 and also chronic obstructive lung disease due to smoking.  (Tr. 505-06).  She also had myofascial pain exacerbating by smoking.  (Tr. 506).  She experienced psychological problems as well.  (Tr. 507).  Dr. Johnson did not believe that plaintiff met any of the Listings of Impairments.  (Tr. 509).  In Dr. Johnson's view, plaintiff was not limited in her ability to sit, stand, or walk.  She could lift twenty pounds occasionally and ten pounds frequently and was limited in the use of her right shoulder.  (Tr. 510-11).  Dr. Johnson could not comment on the extent of any psychological limitations.  Dr. Johnson also responded to interrogatories sent to him after the hearing, noting that nothing in any of the additional records submitted after the hearing changed his opinion.  (Tr. 463-64).

    Ms. Kaufman, the vocational expert, characterized plaintiff's past job as a school bus driver as semi-skilled and, as plaintiff performed it, in the heavy exertional range.  Her job as a waitress was performed at the medium level but is generally classified as light work.  It is also semi-skilled.  The physician's assistant job is usually classified as skilled and light, but plaintiff performed it at the medium and very heavy levels.  Finally, the cleaning work is typically classified as semi-skilled and heavy, but plaintiff performed that job at the medium level.  (Tr. 515).

    Ms. Kaufman was asked to assume that plaintiff was limited physically as described by Dr. Johnson.  Those limitations would preclude the performance of any of her past jobs except the job of medical assistant as it is typically performed.  (Tr. 516).  If, in addition, she had the psychological limitations described by Dr. Tanley, she could do about fifty percent of the available light, unskilled jobs in the region, or about 40,000 jobs,

including positions such as assembler, cashier, and clerical office helper. (Tr. 516-18). If she were limited psychologically as described by Dr. Drown, however, she could not work. (Tr. 518).

V.

Based on the above evidence, the Commissioner found that, prior to her last insured date of March 31, 2004, plaintiff suffered from severe impairments best described as degenerative disc disease of the cervical spine at C5-6 with mild radiculopathy, chronic obstructive pulmonary disease, chronic impingement syndrome of the right shoulder, adjustment disorder with depressed mood, and myofascial pain syndrome. As a result of these impairments, plaintiff was limited to performing a limited range of light work, with no reaching above shoulder level with her right arm. She also had a moderate impairment in her ability to withstand the stress and pressure of daily work and a mild limitation in her ability to relate to others. She was able to understand and follow simple instructions and perform repetitive tasks within the context of a low average range of intelligence. These limitations would preclude the plaintiff's performance of her past work, but she could do the jobs identified by the vocational expert. As a result, she was found not to be disabled.

VI.

Plaintiff is not represented by counsel in this case. As her statement of errors, she attached a letter written by the attorney who represented her in the administrative proceedings. That letter was addressed to the Appeals Council and identified four errors allegedly committed by the Administrative Law Judge. They are (1) that plaintiff never saw responses to written interrogatories which were sent to Dr. Johnson, the medical expert; (2) that the ALJ did not properly evaluate the evidence

concerning plaintiff's psychological condition; (3) that the ALJ improperly rejected the opinion of plaintiff's treating physician, Dr. May; and (4) that the ALJ failed even to mention the reports of Dr. Flexman and Dr. Holzapfel, both state agency reviewing sources, which supported her claim of disability.  The Court reviews these assertions under the following legal standard.

Standard of Review.  Under the provisions of 42 U.S.C. Section 405(g), "[t]he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'"  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Company v. NLRB, 305 U.S. 197, 229 (1938)).  It is "'more than a mere scintilla.'" Id.  LeMaster v. Weinberger, 533 F.2d 337, 339 (6th Cir. 1976). The Secretary's findings of fact must be based upon the record as a whole.  Harris v. Heckler, 756 F.2d 431, 435 (6th Cir. 1985); Houston v. Secretary, 736 F.2d 365, 366 (6th Cir. 1984); Fraley v. Secretary, 733 F.2d 437, 439-440 (6th Cir. 1984).  In determining whether the Secretary's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'"  Beavers v. Secretary of Health, Education and Welfare, 577 F.2d 383, 387 (6th Cir. 1978) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)); Wages v. Secretary of Health and Human Services, 755 F.2d 495, 497 (6th Cir. 1985).  Even if this Court would reach contrary conclusions of fact, the Secretary's decision must be affirmed so long as his determination is supported by substantial evidence. Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983).

The first issue is easily disposed of.  Although plaintiff

-9-

claims she was prejudiced as a result of not having received Dr. Johnson's answers to the interrogatories, his answers essentially repeated his prior testimony. The additional exhibits submitted after the administrative hearing provided almost no additional information about any of the physical conditions which Dr. Johnson evaluated. Plaintiff has not shown how she was prejudiced by his answers. Consequently, although there may have been a procedural irregularity in the way the Commissioner dealt with this evidence, the Court is persuaded that any error was harmless.

Plaintiff's second and third claims both speak to the adequacy of the Commissioner's rejection of the opinions of treating sources. Dr. Drown, who provided at least a year's worth of treatment for plaintiff's psychological condition, and Dr. May, who treated plaintiff for her physical injuries, both submitted reports which, if adopted, would dictate a finding of disability. The Commissioner rejected Dr. Drown's conclusions, and accepted those of Dr. Tanley, a one-time examining source, for two reasons: Dr. Drown appeared to rely heavily on plaintiff's own report of symptoms, which were subject to question based on other evidence in the record, and Dr. Drown's report itself was against the weight of the other psychological evidence. The Commissioner provided no specific explanation for rejecting Dr. May's opinion, and, in fact, did not appear to acknowledge the existence of Dr. May's report concerning plaintiff's diminished physical capacity, referring to him only once in the ALJ's decision, and then only to the extent that he reported some vertigo which was possibly related to plaintiff's work injury. (Tr. 20).

Social Security regulations provide that a treating source's opinion is ordinarily to be afforded significant weight. See 20 C.F.R. §404.1527(d)(2) ("[g]enerally, we give more weight to

opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairments...). As explained in Rogers v. Comm'r of Social Security, 486 F.3d 234, 242 (6th Cir. 2007), "[t]here is an additional procedural requirement associated with the treating physician rule." Under this procedural requirement, the Commissioner must clearly articulate both the weight given to the treating physician's opinion and the reasons for giving it that weight. Two reasons underlie this procedural requirement. First, it assists the claimant to understand why the Commissioner has concluded, contrary to what the claimant has been told by his or her treating doctor, that the claimant is not disabled. Second, it ensures that the Commissioner has correctly applied the substantive law applicable to opinions of treating sources and that an appellate court can review that application in a meaningful way. Id.

  Where the Commissioner does not follow this procedural requirement at the administrative level, the Court cannot simply fill in the required analysis based on the evidence of record. Rather, "[b]ecause of the significance of the notice requirement in ensuring that each denied claimant receives fair process, a failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight accorded the opinions denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." Id. at 243, citing Wilson v. Comm'r of Social Security, 378 F.3d 541, 544 (6th Cir. 2004).

  The Commissioner did articulate two reasons for declining to accept Dr. Drown's opinion, and that rejection does fall within the broad range of discretion granted to the Commissioner in this area. Other reports did suggest that plaintiff either did not have such severe psychological limitations, or that she was

-11-

exaggerating her symptoms to some degree, even to the extent that scores on standard test instruments like the MMPI were invalid. Further, the Commissioner decided that she was not entirely credible, and such determinations are also within the Commissioner's discretion to make as long as there is some supporting evidence for them. Here, the Court cannot say that the Commissioner had no substantial basis for discounting Dr. Drown's opinion to some degree.

The same cannot be said, however, about the Commissioner's treatment of Dr. May's report. Rogers could not be clearer about the Commissioner's obligation to articulate, in the administrative decision itself, the reasons why the opinion of a long-term treating physician is being rejected. The Commissioner is not permitted to provide that rationale in the first instance at the District Court level. Were the Court to permit such *post hoc* rationalizing, it would run afoul of Rogers' directive that a remand is required when the administrative decision does not comply with 20 C.F.R. §404.1527 "even where the conclusion of the ALJ may be justified based upon the record." Id. at 243. Here, the administrative decision contains absolutely no rationale or reason why Dr. May's opinion that plaintiff had severe physical restrictions incompatible with any sustained employment was either rejected outright or given less weight than the opinions of others such as Dr. Johnson, a non-examining and non-treating source. Further, the Commissioner's memorandum engages in exactly the kind of rationalization of the administrative decision that Rogers prohibits, and, for that matter, never cites to Rogers as the controlling case on this issue. In the Court's view, Rogers controls here and requires a remand.

This disposition eliminates the need for further discussion of plaintiff's fourth claim of error. On remand, the Commissioner will have the opportunity to consider further Dr. Flexman's report and Dr. Holzapfel's report and explain why these

reports are either consistent with a finding of no disability or why the Commissioner has chosen to discount their conclusions.

## VII.

For the foregoing reasons, the plaintiff's statement of errors is SUSTAINED IN PART and OVERRULED IN PART. This case is REMANDED to the Commissioner pursuant to 42 U.S.C. §405(g), sentence four, for further proceedings consistent with this opinion. The Clerk shall enter a judgment to that effect.


   /s/   Gregory L. Frost
GREGORY L. FROST
UNITED STATES DISTRICT COURT